UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PACIFIC SHORES SUBDIVISION CALIFORNIA WATER DISTRICT, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES ARMY CORPS OF ENGINEERS, et al.,**<br><br>Defendants. | Civil Action No. 04-2091 (HHK/JMF) |

MEMORANDUM OPINION

This case was referred to me for determination of Plaintiffs' <u>Motion to Supplement the Administrative Record</u> (hereinafter "Pls' Mot."). For the reasons stated herein, Plaintiffs' motion will be denied.

I.   INTRODUCTION

   A.   **Procedural Background**

On August 17, 2004, the California Department of Fish and Game and Del Norte County, California jointly applied to Defendant, United States Army Corps of Engineers ("Corps"), for a ten-year permit to breach Lake Earl and Lake Talawa in Del Norte County, California, at eight to ten feet mean sea level ("msl"). <u>Federal Defendants' Opposition to Motion to Supplement the Administrative Record</u> at 2 (hereinafter "Def's Opp'n"). Following a period of public notice and comment, the Corps issued the permit on January 7, 2005. <u>Id.</u> at 1. On June 22, 2005, Plaintiffs Pacific Shores Subdivision California Water District, Helen Ferguson, Louis Goodgame, and

Ron Plechaty ("Plaintiffs" or "Pacific Shores") brought a lawsuit challenging the issuance of the permit. In its complaint, Pacific Shores alleges that the Corps violated the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*,[1] and the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.*, by granting a permit to breach the lakes at eight to ten feet msl without evaluating the environmental impacts. Id.; Pls' Mot. at 4. On August 2, 2005, this Court ordered the Corps to file an administrative record, which was then filed on December 21, 2005.[2] Subsequently, on February 2, 2006, Pacific Shores requested that the Corps add nineteen documents to the administrative record. Pls' Mot. at 2. The Corps agreed to include three of those documents. Id. On February 9, 2006, Pacific Shores filed its Motion to Supplement the Administrative Record with sixteen documents. Pacific Shores eventually withdrew two of those documents, and thus fourteen documents remain before this Court on Pacific Shores' motion.[3] [4]

According to Pacific Shores, the administrative record is incomplete without the additional fourteen documents. Pls' Mot. at 4; Plaintiffs' Reply to Federal Defendants' Opposition to Motion to Supplement the Administrative Record at 12 (hereinafter "Pls' Reply"). Pacific Shores insists that the documents should be included in the administrative record because

---

[1] All references to the United States Code and the Code of Federal Regulations are to electronic versions in Westlaw and LexisNexis.

[2] A final, amended version of the administrative record was lodged with the clerk's office on February 9, 2006.

[3] Specifically, the fourteen documents are Plaintiffs' exhibits A-D and F-O. Plaintiffs state, "These exhibits are all correspondence between the Plaintiffs or other individuals and Defendants. These documents have been obtained either pursuant to the Freedom of Information Act or were documents sent directly by Plaintiffs." Pls' Mot. at 4.

[4] On March 8, 2006, Defendants filed a Motion for Leave to File Sur-Reply to Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Supplement Administrative Record. On March 14, 2006, Plaintiffs filed their Unopposed Motion for Leave to File Sur-Reply. Both of these motions will be granted.

they are relevant and because they were before the Corps at the time it made its decision to issue the permit. Pls' Mot. at 4; Pls' Reply at 3-5, 12.  Pacific Shores argues that, because the documents were before the agency, the Corps was certainly aware of the various impacts of breaching, and thus ignored these warnings in issuing the permit. Pls' Reply at 5.  In opposition, the Corps claims that it has submitted the "'whole' administrative record, [and] that it includes all documents that were directly or indirectly considered by the decision-maker." Def's Opp'n at 5.  The Corps further insists that the certified record is entitled to a presumption of regularity, which Pacific Shores has failed to overcome. Id. at 5-6.  In addition, the Corps asserts that Pacific Shores cannot invoke an exception to the general prohibition against extra-record review. Id. at 7-8.  However, as I will explain below, this latter argument does not apply to the principal issue before this Court.

      **B.**      **Factual Background**

Located in northern California, lakes Earl and Talawa are tidal lagoons, separated from the Pacific Ocean by only a narrow unvegetated sandbar. Pls' Reply at 2.  From time to time, the sandbar is artificially breached in response to high water levels resulting from the addition of groundwater, rainwater, and stream water to the lakes. Def's Opp'n at 2.  Because the act of "breaching" causes the discharge of material into waters of the United States within the meaning of section 404 of the Clean Water Act, 33 U.S.C. § 1344, any party seeking to breach the lakes must first obtain a permit from the Corps, who has regulatory authority over navigable waters in this capacity. See Clean Water Act, 33 U.S.C. § 1344; Rivers and Harbors Act of 1899, 33 U.S.C. § 403; 33 C.F.R. parts 320-330.

The level at which to artificially breach lakes Earl and Talawa has been entangled in

controversy for many years in northern California. See Administrative Record at 223 ("There is considerable controversy - and technical difficulty - associated with determining what breaching scheme, if any, would result in the 'optimal' lagoon level that balances the needs of all species and habitats under the stewardship of the Department [of Fish and Game]."). This controversy has now found itself on center stage before this Court: the lakes would naturally breach the sandbar at a water level of twelve to fourteen feet msl, the Corps has permitted breaching at eight to ten feet msl, and Pacific Shores argues that the lakes should be breached much lower, at four to six feet msl. Pls' Reply at 2-3; Def's Opp'n at 2.

## II.  DISCUSSION

### A.  Legal Standard

Section 706 of the Administrative Procedure Act ("APA") directs a court reviewing an agency decision to "review the whole record or those parts of it cited by a party."[5] 5 U.S.C. § 706; Ctr. for Auto Safety v. Fed. Highway Admin., 956 F.2d 309, 314 (D.C. Cir. 1992); Fund for Animals v. Williams, 391 F. Supp. 2d 191, 196 (D.D.C. 2005). Review of the "whole record" under section 706 "is to be based on the full administrative record that was before the [agency decisionmakers] at the time [they] made [their] decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); Am. Bioscience, Inc. v. Thompson, 243 F.3d 579, 582 (D.C. Cir. 2001). This Court

---

[5] Upon reviewing the administrative record, a court will set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This "arbitrary and capricious" standard of review is a highly deferential one, Envtl Defense Fund, Inc. v. Costle, 657 F.2d 275, 282 (D.C. Cir. 1981); Ethyl Corp. v. EPA, 51 F.2d 1, 34 (D.C. Cir. 1976) (en banc), and presumes the agency's action to be valid. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); Ethyl Corp., 541 F.2d at 34. Under this narrow standard, a court cannot substitute its judgment for that of the agency. Overton Park, 401 U.S. at 416; Ethyl Corp., 541 F.2d at 34.

has interpreted the "whole record" to include "all documents and materials that the agency 'directly or indirectly considered'. . . . [and nothing] more nor less." Maritel, Inc. v. Collins, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993)); Fund for Animals, 391 F. Supp. 2d at 197; Amfac Resorts, LLC v. Dep't of Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). In other words, the administrative record "should not include materials that were not considered by agency decisionmakers." Novartis Pharms. Corp. v. Shalala, No. 99-323, 2000 U.S. Dist. LEXIS 6152, at *1, *11-12 (D.D.C. Apr. 28, 2000) (citing Ammex, Inc. v. United States, 62 F. Supp. 2d 1148, 1156 (C.I.T. 1999) ("relevant materials that were neither directly nor indirectly considered by agency decisionmakers should not be included")).

Limiting review of the administrative record to only what the agency decisionmakers directly or indirectly considered is important. A broad application of the phrase "before the agency" would undermine the value of judicial review: "[I]nterpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless." Fund for Animals v. Williams, 245 F. Supp. 2d 49, 57 n.7 (D.D.C. 2003). Thus, to ensure fair review of an agency decision, a reviewing court "'should have before it neither more nor less information than did the agency when it made its decision.'" Fund for Animals, 391 F. Supp. 2d at 196 (quoting IMS, P.C. v. Alvarez, 129 F.3d 618, 623 (D.C. Cir. 1997)); accord Overton Park, 401 U.S. at 420.

Supplementation of the administrative record is the exception, not the rule. Motor & Equip. Mfrs. Ass'n Inc., v. EPA, 627 F.2d 1095, 1105 (D.C. Cir. 1979); Fund for Animals, 391 F. Supp. 2d at 197 ("Courts grant motions to supplement the administrative record only in

exceptional cases."). To be sure,

> [J]udicial reliance on an agency's stated rationale and findings is central to a harmonious relationship between agency and court, one which recognizes that the agency and not the court is the principal decision-maker. Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President.

San Luis Obispo Mothers for Peace v. NRC, 751 F.2d 1287, 1325-26 (D.C. Cir. 1984), decision aff'd on reh'g en banc, 789 F.2d 26 (D.C. Cir. 1986). Therefore, absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record. See Maritel Inc., 422 F. Supp. 2d at 197; see also Bark MK Ranches, 994 F.2d at 740 (stating that an administrative record is entitled to the same presumption of regularity as other administrative procedures). Once an agency presents a certified copy of the complete administrative record to the court, the court presumes that the record is properly designated. See Ammex, Inc., 62 F. Supp. 2d at 1156. Common sense dictates that the agency determines what constitutes the "whole" administrative record because "[i]t is the agency that did the 'considering,' and that therefore is in a position to indicate initially which of the materials were 'before' it - namely, were 'directly or indirectly considered.'" Fund for Animals, 245 F. Supp. 2d at 57.

    **B.    Plaintiffs' Motion is Denied for Failure to Overcome Presumption of Administrative Regularity**

        **i.    Supplementing the Record vs. Extra-Record Evidence**

It would be useful to first clarify what it means to "supplement" the record. There appears to be some confusion regarding the difference between supplementing the record, i.e. adding to the volume of the administrative record with documents the agency considered, and

allowing the review of extra-record evidence, i.e. viewing evidence outside of or in addition to the administrative record that was not necessarily considered by the agency.  It is necessary to clarify the difference between these two concepts, because the Corps argued in its defense that no exception to extra-record review applies. See Def's Opp'n at 7-8.

Defendants appear to have conflated the act of supplementing the record with permitting consideration of extra-record evidence.  For a court to supplement the record, the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker.  On the other hand, for a court to review extra-record evidence, the moving party must prove applicable one of the eight recognized exceptions to the general prohibition against extra-record review. See Fund for Animals, 391 F. Supp. 2d at 197-98 (citing Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (identifying the eight exceptions)).  Consideration of extra-record information is appropriate when simply reviewing the administrative record is not enough to resolve the case. Esch, 876 F.2d at 991.  For example, in cases arising under the National Environmental Policy Act, a court may need extra-record review to evaluate whether an agency's analysis of potential environmental impacts of a proposed action was arbitrary and capricious. See Amfac Resorts, LLC v. DOI, 143 F. Supp. 2d 7, 14-15 (D.D.C. 2001) (extra record review "enable[s] a reviewing court to determine that the information available to the decisionmaker included a complete discussion of environmental effects and alternatives"); see also, Sabine River Auth. v. DOI, 951 F.2d 669 (5th Cir. 1992) (court must look outside the administrative record to determine whether the agency adequately considered the environmental effects of a particular project); Suffolk County v. Sec. of Interior, 562 F.2d 1368, 1384 (2d Cir. 1977) (same).

Plaintiffs clearly seek to <u>include</u> evidence in the record as opposed to moving the Court to review evidence <u>outside of</u> or <u>in addition to</u> the administrative record. See Pls' Mot. at 4 ("Based on the foregoing, Pacific Shores respectfully requests that this Court declare that Exhibits A through P should be included within the Administrative Record currently before this Court."). While a motion for the Court to consider the fourteen documents at issue as extra-record evidence may be appropriate in this case, such a motion is not presently before me. Because Pacific Shores has clearly chosen not to take the road of extra-record review by their present motion, I will not address the Corps' arguments thereto and will only address my reasons for denying supplementation of the record.

### ii. The Corps' Administrative Record was Properly Designated

After a careful review of the parties' pleadings, as well as a review of the administrative record and Pacific Shores' proffered documents, I find that Pacific Shores has failed to overcome the presumption that the Corps properly designated the record. Because the Corps' designation of the record is entitled to a strong presumption of regularity, <u>San Luis Obispo Mothers for Peace</u>, 751 F.2d at 1329, Plaintiffs must put forth concrete evidence to show that the record was not properly designated. Plaintiffs have failed to rebut this presumption. Pacific Shores cannot meet its burden simply by asserting that the documents are relevant, were before or in front of the Corps at the time it made its decision, and were inadequately considered. See Pls' Mot. at 4; Pls' Reply at 5-12. This is pure speculation. Rather, Pacific Shores must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record. See <u>Novartis Pharms Corp. v. Shalala</u>, No. 99-323, 2000 U.S. Dist. LEXIS 17491, at *1, *12-13 (D.D.C. Nov. 27, 2000).

Moreover, it is not enough for Pacific Shores to state that the documents were before the entire Corps, but rather it must instead prove that the documents were before the Corps' decisionmaker(s). See Overton Park, 401 U.S. at 420. Although Plaintiffs imply that the Corps possessed some of the documents because Plaintiffs obtained them through a Freedom of Information Act request, see Pls' Mot. at 4, there is no evidence that the Corps' decisionmaker(s) were actually aware of the fourteen documents Plaintiffs seek to include. Beyond their description and the date of the proffered exhibits, Pacific Shores should also describe when the documents were presented to the agency, to whom, and under what context. The mere fact that Pacific Shores had to bring these documents to the Corps' attention strongly indicates that they were not in fact before the permit decisionmaker(s).

The administrative record in this case consists of 1593 pages of reports, correspondence, studies and analyses. The sheer volume and complexity of this administrative record suggests that it is complete. Under Fund for Animals, 245 F. Supp. 2d at 57, the Corps is not obligated to include every potentially relevant document existing within its agency. Only those documents that were directly or indirectly considered by the Corps' decisionmaker(s) should be included in the administrative record. See Maritel Inc., 422. F. Supp. 2d at 196. It is the Corps that did the "considering," not Pacific Shores. Because Pacific Shores is unable to show by clear evidence that the Corps' certified record is incomplete and that the fourteen documents were ever before the permit decisionmaker(s), the Corps is entitled to the presumption that it properly designated the record.

### III. CONCLUSION

Based on the foregoing, I cannot find that the documents proffered by Plaintiffs were

"before the agency decisionmaker" and should have been included in the administrative record.

Plaintiffs' motion, therefore, will be denied.

**Dated:**

                                                     **JOHN M. FACCIOLA**
                                                   **UNITED STATES MAGISTRATE JUDGE**